ELIZA O. HUNT

v.

THE CITY OF CHICAGO.

*Filed at Ottawa September 25, 1880—Rehearing denied March Term, 1881.*

DEDICATION—*of street, by plat.* Where a party in subdividing his lots adjoining a prior subdivision by another, of the remaining part of the block, upon the plat of which prior subdivision is indicated a street next to such party's lots, having the appearance of being taken off the ground first platted, makes also a plat showing lots which by their dimensions embrace all of his ground, and a street the same as in the first subdivision, he will not be held to have dedicated any part of his land for any part of such street. Such person will have the right to presume that the intervening street was taken out of that part of the block first subdivided and platted, and that no part of it encroached upon his lots.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

Mr. WILLIAM H. HOLDEN for the appellant:

The dedication of land to public uses is purely a question of intention. *Godfrey* v. *City,* 12 Ill. 30; *Proctor* v. *Lewiston,* 25 id. 153; *Harding* v. *Town,* 61 id. 192.

The law concerning plats that was in force at this time (Rev. Stat. 1845, p. 115, §§ 17, 18, etc.,) required the plat to particularly describe the streets and lots, giving their dimensions, etc., and required the lots to be numbered and that their precise length and width should be stated on the plat, together with any streets which border on the same.

Applying the law as it existed at the time, to the plat in question, it seems beyond controversy that, as the dimensions given for the lots included the apparent half streets bordering on them, and as dotted lines embraced those apparent parts of half streets, Mr. Rockwell did not dedicate the spaces included within the dotted lines and measurements of his lots, as streets.

Dotted lines enclosing land on plats indicate an intention not to dedicate the part included in them. *Town, etc.* v. *Templeton,* 71 Ill. 68.

Where a city claims the fee to a street it must appear that a plat has been regularly made and recorded. *Manly* v. *Gibson,* 13 Ill. 308.

Mrs. Hunt, by showing in her plat a street on the east of her lots, the same as appears on the west side of the Freeman lots in his plat, does not dedicate any of her land, as the statute requires a plat to show all streets bordering on the lots of the subdivision.

Where a dedication is relied on, the acts of both the donor and the public authorities should be unequivocal and satisfactory of the design to dedicate, on the one part, and to accept on the other. *Grube* v. *Nichols,* 36 Ill. 96.

Mr. Francis Adams, for the appellee, presented the facts and testimony at some length, and insisted that, from the facts so presented, there was a dedication on the part of the appellant.

Mr. CHIEF JUSTICE DICKEY delivered the opinion of the Court:

Block 10, in Rockwell's addition to Chicago, before its subdivision into lots, was 660 feet long from east to west, and 431 feet wide from north to south.

This block was first subdivided into 17 lots, by a plat which was not filed for record until July 18, 1854.

That plat was as follows:

PLAT SHOWING LOTS 11 to 17, inclusive, of Block 10, Rockwell's Addition to Chicago. Filed for record July 18, 1854, Book 85, p. 40.

The figures upon the plat evidently relate to the entire size of the block, embracing 33 feet on the east and 33 feet on the south of what was intended to be made into lots, which was indicated upon the plat as dedicated or proposed to be dedicated, by a dotted line for half a street on the east and half a street on the south. It will be observed that at the south-east corner of the block, is a stone, which is a monument from which the plat could be traced. This left lot 17,

627 feet long from east to west and one chain or 66 feet from north to south.   While lots 14, 15, and 16 are marked upon their eastern front as 1.843 (chains), yet it is evident, on inspection of the plat—and the scale—that the 1.843 at the· east end of lot 14, represents the distance to the center of the street south of the corner of the lot (14), and that that lot was left 88⅔ feet front, while lots 15 and 16 each had a front of 121⅔ feet, and these lots 14, 15 and 16, although marked by the figures on the plat as 5.46 chains long from east to west, were evidently but 327 feet long from east to west, representing the 5 chains and 46 links, less half a chain, or 33 feet, which was proposed to be cut off the east end of these lots, to constitute a part of what is now Leavitt street, and was formerly called Cross street, so that the ground embraced in the lots 11 to 17 inclusive, was 627 feet from east to west, and 398 feet from north to south; leaving one half of Cross street to the east and one-half of Jackson street to the south.

Of this ground, lots 11, 12 and 13, were 332 feet from north to south, and 300 feet from east to west.   Their distance from east to west is marked upon the plat in chains at 91, 1.818, 1.818, which makes 300 feet.   These three lots were subsequently bought by Mrs. Hunt, the appellant.

Subsequently, Freeman and others became proprietors of lots 14, 15, 16 and 17.   These lots, as shown upon the plat, consisted of lot 17, which was 66 feet from north to south and 627 feet from east to west; and lots 15 and 16 were each 327 feet from east to west, and 121⅔ from north to south; and lot 14, which was 327 feet from east to west, and 88⅔ feet from north to south.

Being thus the owners of this piece of land, which, on its longest line from east to west, was 627 feet, they subdivided it into lots, as shown by the following plat:

FREEMAN's and others Subdivision in Rockwell's Addition to Chicago, Block 10, Lots 14, 15, 16 and 17. Filed for record July 5, 1854. Recorded in Book 85, p. 25.

Jackson St.

Upon the inspection of this plat it will be seen that in making it, these proprietors have embraced in it 33 feet more ground from east to west than they owned, unless they owned the 33 feet on the east—shown on the first plat as part of a street. Beginning at the north-west corner, they by their plat evidently dedicate, as part of a proposed street, or lay off for a lot, a piece of ground 30 feet from east to west and 66 feet from north to south. The dotted line would indicate that it was intended to be, then or thereafter, appropriated as half a street. Traveling east on the north line, we have a lot 125 feet, an alley 23 feet, a lot 125 feet, a street 60 feet, a lot 140 feet, and alley 17 feet, and then a lot 140 feet, which, being added together, makes 660 feet from the north-west corner of their lot 17 to the north-east corner of their lot 17, whereas their lot 17, was in fact, by the original plat, but 627 feet long.

Three hundred feet from the north-west corner of their plat, strikes the line of what, as shown upon the plat, is a street 60 feet wide, running north and south, and marked Elizabeth street, and this plat was duly acknowledged and placed upon record July 6th, 1854. Although recorded before the plat first above mentioned, it evidently was made after, for this shows Cross street at the east end of the block, as indicated upon the subdivision of Rockwell's addition.

After these plats were placed upon record, Mrs. Hunt being the proprietor of the residue of the block not platted by Freeman's subdivision, consisting of the original lots 11, 12 and 13, made a plat, by which she subdivided these three original lots into 27 sub-lots, an alley, and a half street. The following is a copy of her plat:

SUBDIVISION of Lots 11, 12 and 13, in Block 10 of Rockwell's Addition to Chicago.   Filed for record Oct. 9th, 1855, Book 98, p. 5.

This plat was made and recorded the 9th of October,1855. To it is attached the following certificate:

"STATE OF ILLINOIS, COUNTY OF COOK, } ss.
                        CITY OF CHICAGO. }

"I hereby certify that I have surveyed lots 11, 12 and 13, in block 10, in Rockwell's addition to Chicago; also that I have subdivided the same into lots, alleys and half street, as represented on the above plat of the same. I further certify said plat to be a correct representation of said survey and subdivision.        SAMUEL S. GREELEY, City Surveyor."
*October* 8, 1855."

And a certificate of Mrs. Hunt, by her attorney, was added, declaring that she owned lots 11, 12 and 13 in block 10, and that she has caused the same to be subdivided as represented on the plat; and a certificate of a justice of the peace that the plat was duly acknowledged and that the subdivision was the same as represented thereon.

It is claimed by appellee, that by the acknowledgment and recording of this plat, which was recorded October 9th, 1855, Mrs. Hunt dedicated from the east part of her land, one-half of what was designated as Elizabeth street on the map of Freeman's subdivision. This she denies, and the controversy is as to whether that dedication was made.

It seems exceedingly clear that the making and recording of that map is not evidence of a dedication, by her, of any land on the eastern side of her lots as part of a street. She knew that she owned the three lots in the southwest corner of this block 10, which three lots embraced a piece of land 300 feet from east to west, and a little over 330 feet from north to south, excluding 33 feet on the south for half of Jackson street. She found upon the records the Rockwell plat and the Freeman plat, each purporting to be a plat of the whole of this block 10, so far as its north boundary is concerned. On Rockwell's plat it was laid down at ten chains or 660 feet. On Freeman's plat it was laid down as 660 feet. The fair inference to be drawn from

that fact was, that the north-east corner of Freeman's plat was intended to be identical with the north-east corner of Rockwell's plat; and the north-west corner of Freeman's plat was intended to be identical with that of Rockwell's plat. If so, then Elizabeth street was, as shown on Freeman's plat, all taken out of that part of block 10 belonging to Freeman and others, and no part of it encroached upon lots 11, 12 and 13, which belonged to Mrs. Hunt. It was true that, on Rockwell's plat, which was first made, there was 33 feet dotted off on the east side as a part of Cross street; but it was also true that at the time Freeman recorded his map Rockwell's map had not been recorded, and hence it might readily have been inferred (if noticed at all) that the dedication thereby to the public of 33 feet for part of Cross street had not become effective, and it might well be inferred that Freeman, having acquired the land before the plat was recorded, had chosen not to make the dedication indicated as proposed on Rockwell's plat. At all events, any reasonable person looking at the map, without any explanation or information as to the intention of Freeman, finding his north line to be exactly 660 feet and to purport to be the north line of block 10, would necessarily assume that it embraced the entire north line of the block as it was originally, before Rockwell made his map. Freeman's map left, in block 10, and west of Elizabeth street, a space unplatted, which, from east to west, was just the width of Mrs. Hunt's ground, and from north to south was just the length of Mrs. Hunt's land. The fair inference was that this space represented her land. Whether it was Freeman's intention to make his map such as to make a dedication of 60 feet wide for the whole length of Elizabeth street, from his own land, is not material. The question is, what was the intention of Mrs. Hunt when she made her map. Looking at her map, we find that there is set off for a half street, from the west part of her land, 30 feet, by dotted lines, and the words "half street" are written upon the plat. Then the certificate of the surveyor attached

to her plat says that he subdivided lots 11, 12 and 13 of this block "into *lots, alleys* and *half street,*" "as represented on the plat of the same." He says nothing about setting off any part of the ground contained in these three lots as a part of Elizabeth street, and there is nothing on the face of the plat to indicate that he did so. On the contrary, his half street is marked as to be taken from the *west* side of the ground, and his two alleys are laid down, one running east to west, 12 feet wide, and one running from the north to the south, half-way through the ground, 20 feet wide; and all the rest of the ground, on the plat, is taken up by lots, and the size of the lots fronting on Jackson street are given—ten of them at 25 feet, one at 20 feet, and the half street at 30 feet, making exactly 300 feet, which was the entire width of her land. If the half street be taken as a part of her ground, it is evident that no part of her ground could have extended into Elizabeth street. It is true Elizabeth street appears at the east of her plat, but not as a part of it,—and this because the statute required the map to show *adjoining* streets.

Whatever may have been the intention of Freeman in fact in making his plat, it seems exceedingly clear that Mrs. Hunt in making her plat had no intention of setting off any part of her ground, from the east, as a part of Elizabeth street. It requires all of her land to fill the rest of the plat, and the description in the certificate of the surveyor is such as to require all of her ground to meet the declaration that the ground embraced in original lots 11, 12 and 13 is divided into "*lots, alleys, and a half street.*"

The ingenious argument in behalf of appellee suggests that Mrs. Hunt, in studying Freeman's plat, should have begun at the north-east corner, and should have assumed that that was set back 33 feet from the north-east corner of the original plat, as made by Rockwell (and this in the face of the fact that the north line of the block on both of the plats was shown as the same in length), and then, measuring westward, she would have found and reached, at 327 feet, a point

north of the east line of her land at the center of Elizabeth street; and therefore, he insists that Freeman's map indicated to her that he intended to dedicate but half of it south of that point. It would seem that had he intended to dedicate but half of the street south of that point he would have run a dotted line through the centre of the street, in so far as it was not taken out of lot 17, but no such line appears upon his map. The argument used is that the land embraced in Elizabeth street did not belong to him. If you assume that the north-east corner of his plat was intended to be 33 feet west of the corner of the block, as placed by Rockwell's subdivision, that is true; but his plat does not clearly so indicate. Nor is any reason assigned why, in her examination of that plat, she should have begun at the north-east corner rather than at the north-west corner.

The other proofs in this record fail to show that Mrs. Hunt ever intended to make the dedication in question, or that she did any act which can properly be regarded as such a dedication.

The judgment of the Appellate Court in this case must be reversed, and the cause remanded, with directions to that court to reverse the decree of the circuit court and remand the cause to the circuit court to enter a decree granting the relief sought in the bill.

*Judgment reversed.*